UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Robert Y. Scott and CPB1, LLC,<br><br>    Plaintiffs,<br>v.<br><br>Catawba Valley Brewing Company, Jetta M. Pyatt., Billy Pyatt, and Scott Pyatt,<br><br>    Defendants. | Case No.: 2:18-cv-1539-RMG<br><br>**ORDER AND OPINION** |

This matter is before the Court on the Motion to Dismiss (Dkt. No. 15) by Defendants Jetta M. Pyatt, Billy Pyatt and Scott Pyatt (collectively, the "Individual Defendants"). For the reasons set forth below, the Court denies the motion.

I. **Background**

Plaintiff Robert Scott alleges that starting in early 2017 he introduced the idea for, and ultimately helped arrange, the sale of Palmetto Brewing Company ("Palmetto") to Defendant Catawba Valley Brewing Company ("Catawba."). Defendant Billy Pyatt is the Chief Executive Officer of Catawba, Defendant Jetta Pyatt is the Chief Financial Officer of Catawba, and Defendant Scott Pyatt is the Chief Operations Officer and Chief Development Officer of Catawba. (Dkt. No. 11 at ¶ 6–8.) The Individual Defendants are also the owners of Catawba. (Dkt. No. ¶ 14.) Plaintiff alleges that over the course of the negotiations in 2017, Defendants promised Plaintiff and his friend, Michael Genovese, the opportunity to purchase 15% of Catawba for $3,500,000. (Dkt. No. 11 at ¶ 27.) 12.8555% would be purchased through Plaintiff CPB1, LLC, an entity owned by Robert Scott, with the remaining 2.145% purchased through CPB2, LLC, an entity owned by Genovese. (Dkt. No. 11 at ¶ 34.) Plaintiffs allege the offer was memorialized in an email. (Dkt. No. 11 at ¶ 31.) Plaintiffs allege that they spent over $200,000 relying on the stock

purchase agreement, including closing on a loan for $1,500,000 to fund the cash portion of the purchase. (Dkt. No. 11 at ¶ 36.) Plaintiffs further allege that in 2017, Defendants offered Robert Scott a consulting agreement with Catawba after the sale was finalized. (Dkt. No. 11 at ¶ 38.) Quoting an email dated November 20, 2017, Plaintiffs allege that Billy Pyatt offered Robert Scott a salary starting at $60,000 - $80,000, depending on inventive based compensation. (Dkt. No. 41.) Robert Scott accepted and executed the consulting agreement. (Dkt. No. 11 at ¶42.) Catawba purchased Palmetto's assets on December 29, 2017 for $8,952,400. (Dkt. No. 11 at ¶ 43.) Plaintiffs allege that Robert Scott played an active role in negotiating and securing financing for the ultimate agreement. (Dkt. No. 11 at ¶¶ 12, 16 – 19, 22, 24.)

Plaintiffs allege that after the sale of Palmetto to Catawba closed, the Defendants refused to sell Plaintiffs the previously agreed to 15% of the company and cancelled the consulting agreement. (Dkt. No. 11 at ¶¶ 51 – 52, 66.) Plaintiffs allege that this refusal was made clear in an email dated April 5, 2018, from Billy Pyatt to Robert Scott, stating that "I know you disagree with our decision not to sell you part of our company. I hope you can understand the reasons – Jetta, Scott and I were not ready to part with a portion of our 'baby'. In time it may turn out to be a poor decision, but that is our path." (Dkt. No. 11 at ¶ 52.)

Plaintiffs filed suit in the County of Charleston Court of Common Pleas on May 3, 2018. (Dkt. No. 1-1.) The case was removed to this Court on June 6, 2018, based on diversity jurisdiction. (Dkt. No. 1.) Plaintiffs filed an Amended Complaint on July 6, 2018. (Dkt. No. 11.) Plaintiffs allege breach of contract as to the stock purchase agreement, promissory estoppel, breach of fiduciary duty, and negligent misrepresentation against the Individual Defendants. (Dkt. No. 11 at 9 – 14.) Plaintiffs allege breach of contract as to the consulting agreement and quantum meruit/unjust enrichment against Catawba. (*Id.*) The Individual Defendants filed this motion to

dismiss alleging that the Plaintiffs have failed to make out claims against them in their individual capacities. (Dkt. No. 15). Plaintiffs oppose the motion. (Dkt. No 17.)

II. **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses.... Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

III. **Discussion**

Defendants allege that the Amended Complaint does not plead sufficient facts to hold the Individual Defendants liable for the alleged wrongful actions. (Dkt. No. 15 at 4.) Defendants allege that the Amended Complaint contains only unsupported legal conclusion, and is devoid of the specific facts necessary to plead the causes of action, such as the number of shares or percentage of ownership each Individual Defendant agreed to sell. (Dkt. No. 15 at 3 – 5.)

It is well settled under South Carolina law that, as a general rule, "[a]n officer, director, or controlling person in a corporation is not, merely as a result of his or her status as such, personally liable for the torts of the corporation." *Rowe v. Hyatt*, 321 S.C. 366, 369, 468 S.E.2d 649, 650 (1996). However, that does not mean that officers, directors or controlling individuals in a corporation are free from any potential liability based on their actions. "To incur liability, the officer, director, or controlling person must ordinarily be shown to have in some way participated in or directed the tortious act." *Id.* at 369. As the South Carolina Supreme Court explained in *Rowe*, a case involving an allegedly fraudulent sale of a car, the car dealer could still be held liable if he "personally committed, participated in, directed or authorized the misrepresentation of the vehicle sold to the [plaintiffs.]" *Id.*

The Plaintiffs here have clearly alleged facts sufficient to show that, if proven, the Individual Defendants each participated in and directed the wrongful acts. Of particular note, Plaintiffs included the following allegations in their Amended Complaint (Dkt. No. 11), each identifying the three Individual Defendants:

- ¶ 26: On May 8, 2017, Bob Scott, Billy Pyatt, Jetta Pyatt and Scott Pyatt met in Charlotte to discuss Robert Scott acquiring an ownership interest in Catawba. Plaintiffs allege that all three agreed to sell Robert Scott an ownership interest.

- ¶ 38: In November 2017, Billy Pyatt represented to Bob Scott that he, Jetta Pyatt and Scott Pyatt discussed Robert Scott continuing to work for Catawba even after the purchase of Palmetto as a consultant.

- ¶ 52: On April 5, 2018, Billy Pyatt e-mailed Robert Scott to cancel the consulting agreement and the agreement for Plaintiffs to buy into Catawba. In that e-mail, Billy Pyatt stated "I know you disagree with our decision not to sell you part of our company. I hope you can understand the reasons – *Jetta, Scott, and I* were not ready to part with a portion of our 'baby'. In time it may turn out to be a poor decision, but that is our path." (emphasis added).

In addition to these allegations relating to all three Individual Defendants, the Amended Complaint contains multiple other allegations regarding the specific acts of Billy Pyatt and Jetta Pyatt. (Dkt. No. 11 at ¶¶ 25, 31, 41, 46 – 48, 50.) These allegations, if true, are sufficient to plead that the Individual Defendants personally participated in and, in many instances, directed the acts that led to Plaintiffs claims, namely, the alleged breach of the consulting and stock purchase agreements.

Prior decisions by the Fourth Circuit and this Court support the view that the Plaintiffs properly pleaded claims against the Individual Defendants. *See Steinke v. Beach Bungee, Inc.*, 105 F.3d 192, 197 (4th Cir. 1997) (finding individual defendants personally liable where they "personally directed" the use of unsafe equipment and "chose" to have the unsafe device installed by an unqualified mechanic); *Green v. Mastodon Ventures, Inc.*, No. C. A. 6:07-3805-HMH, 2008 WL 697150, at *1 (D.S.C. Mar. 12, 2008) (denying motion to dismiss and finding that complaint's allegations were sufficient to show that individual defendant "participated" in the allegedly wrongful actions since "[defendant] personally pursued and solicited the Plaintiff's investment in Mastodon and in other entities…[and]…pressured the plaintiff to invest in other companies."). Therefore, Plaintiffs have pleaded sufficient facts regarding the Individual Defendants.

The Individual Defendants also allege that Plaintiff's cause of action for breach of fiduciary duty fails since Plaintiffs' claim relies on the unsupported legal conclusion that "[a] fiduciary relationship existed between the Plaintiffs and Defendants." (Dkt. No. 15-1 at 4.) To establish a claim for breach of fiduciary duty, a plaintiff must prove that: "1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately

resulting from the wrongful conduct of the defendant." *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 335–36, 732 S.E.2d 166, 173 (2012).

The South Carolina Supreme Court has recognized that a fiduciary duty exists between the promoters of a corporation and that a fiduciary duty exists between directors of a corporation. *See Duncan v. Brookview House, Inc.*, 262 S.C. 449, 456, 205 S.E.2d 707, 710 (1974) ("The promoters of a corporation occupy a relation of trust and confidence towards the corporation which they are calling into existence as well as to each other, and the law requires of them the same good faith it exacts from directors and other fiduciaries."). *See also Bivens v. Watkins*, 313 S.C. 228, 232, 437 S.E.2d 132, 134 (Ct. App. 1993) ("[a]s a promoter, Watkins owed Mrs. Bivens a duty to act in good faith and with due regard for her investment in the corporation.") (emphasis added). Therefore, Plaintiffs have sufficiently pleaded that a fiduciary duty existed by alleging that Robert Scott helped negotiate and promote the acquisition of Palmetto by Catawba and that Robert Scott was briefly brought on as the Chief Financial Officer at Catawba. (Dkt. No. 11 at ¶¶ 26, 46 – 48.) Plaintiffs further allege that the duty was breached and that damages resulted from the breach. (Dkt. No. 11 at ¶¶ 31, 36, 52.) Therefore, Plaintiffs properly pleaded a breach of fiduciary duty.

Defendants' brief in support of their motion focuses almost exclusively on the Plaintiffs' alleged failure to specify facts allowing for the Individual Defendants to be held liable, and for the allegedly conclusory statement that a fiduciary relationship existed. As discussed above, these arguments do not support the Individual Defendants' motion to dismiss. To the extent the Individual Defendants also argue that the Plaintiffs failed to sufficiently plead the remaining three causes of action, their motion to dismiss similarly fails. Plaintiffs have pleaded sufficient facts, as demonstrated by their detailed Amended Complaint from Paragraphs 12 through 52, to support

causes of action for breach of contract as to the stock purchase agreement, promissory estoppel, negligent misrepresentation.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss (Dkt. No. 15.) **AND IT IS SO ORDERED.**

_____
Richard M. Gergel
United States District Court Judge

August 17, 2018
Charleston, South Carolina